IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL B. JACKSON, #R-74865, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 17-cv-490-NJR ) |
| MS. BRAZAIL-SAWYER, R. ROBINSON, MS. WUEST, MR. MCINTYRE, MS. BEEBE, MS. KING, SGT. ARBAN, and MR. TEVERNBAUHN, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Michael B. Jackson, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Pinckneyville Correctional Center ("Pinckneyville"), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff brings allegations pertaining to constitutional violations that allegedly occurred while he was housed at South Western Illinois Correctional Center ("SWIC"). (Doc. 1). He seeks monetary damages and injunctive relief.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

>                (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>                (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

The Complaint alleges that eight named defendants infringed upon Plaintiff's civil rights by (1) mishandling his written grievances and good conduct credit paperwork; (2) issuing false disciplinary reports and forcing Plaintiff to sleep on an unsanitary mattress (allegedly acts of retaliation); and (3) interfering with Plaintiff's attorney-client communications. The Complaint is difficult to decipher because Plaintiff's handwriting is often hard to read, however, the Court was able to discern the following allegations:

*Good Conduct Credit Restoration*

When Plaintiff was housed at Vandalia Correctional Center, he had 30 days of good conduct credit revoked. (Doc. 1, p. 6). According to the Complaint, IDOC rules allow inmates to seek restoration of revoked good conduct credit. *Id*. The first restoration request must be submitted within 90 days of the challenged revocation. *Id.* After that, inmates may resubmit

2

restoration requests every 90 days (90 days from the date of the last rejection). *Id.* Prior to arriving at SWIC, Plaintiff was submitting restoration requests every 90 days. *Id.* Upon arriving at SWIC, however, Plaintiff's restoration requests have been delayed. Specifically, Plaintiff contends that Robinson, a counselor, waited approximately 30 days to submit one of Plaintiff's restoration requests. Plaintiff contends that this is a violation of IDOC policy. *Id.*

*Retaliation Soiled Mattress*

Plaintiff has a history of filing grievances at prior prisons and at SWIC. (Doc. 1, pp. 5-7). When Plaintiff refused to withdraw certain grievances, two individuals retaliated against him. (Doc. 1, p. 7). Specifically, Plaintiff alleges that an individual by the name of Ms. Priest (described in the body of the Complaint as a placement officer) forced him to sleep on a foul smelling mattress covered in feces and urine. *Id.* Defendant Arban also participated in this retaliation. Arban wrote Plaintiff's name on the soiled mattress and told Plaintiff he had to use that same soiled mattress for the remainder of his stay at SWIC. *Id.* The individual identified as Ms. Priest is not named as a defendant in this action.

*Additional Alleged Misconduct by Counselors*

Plaintiff alleges that certain counselors (Robinson, Wuest, Beebe, Tevernbauhn, and King) "drug" him into the office for writing grievances. (Doc. 1, p. 7). He contends that this occurred on several occasions, including 9/22/2016, 11/4/2016, 11/22/2016, and 12/9/2016. He also alleges that "staff" black balled him, told him his grievances caused problems, and that his grievances would continue to be denied. (Doc. 1, p. 8).

*Interference with Attorney Communications*

Plaintiff claims that, after he filed a grievance regarding an incident involving McIntyre, McIntyre began monitoring all of his attorney phone calls. (Doc. 1, p. 8). Specifically, Plaintiff

3

contends that McIntyre refused to leave the room when Plaintiff had phone calls with his attorney and became angry with Plaintiff when he informed his attorney about the monitoring. (Doc. 1, pp. 8-9). On at least one occasion, Wuest, McIntyre's supervisor, was present and participated in the phone monitoring. (Doc. 1, p. 9). During one phone call, when Plaintiff's attorney learned about the monitoring, he asked McIntyre and Wuest to leave the room. *Id.* Defendants refused. *Id.* Accordingly, Plaintiff's attorney terminated the phone call and indicated he would have to meet with Plaintiff in person, which he did. *Id.* The Complaint suggests that the monitoring was not an isolated incident and occurred on more than one occasion. (Doc. 1, pp. 8-9).

*Good Conduct Credit Contract*

Plaintiff contends that on February 17, 2017, McIntyre directed Plaintiff to sign a good conduct contract (SWIC's good conduct contract). (Doc. 1, p. 8). Plaintiff indicated that he had an operative good conduct contract (from the transferor prison) and that it was premature to ask him to sign a new contract. *Id.* McIntyre indicated that Plaintiff had to sign the SWIC contract, and if he failed to do so, he would be subject to disciplinary charges for violating a direct order. *Id.* Accordingly, Plaintiff signed the contract under duress and in violation of IDOC policy. *Id.*

*Mishandling of Grievances*

Throughout the Complaint, Plaintiff alleges that various defendants, other individuals who are not defendants in this action, or generic groups of individuals (for example "they" or "staff") mishandled his grievances and complaints. (Doc. 1, pp. 6-9). *Id.* Generally, he alleges his grievances were not taken seriously or were not sufficiently investigated. He also asked Bazail-Sawyer, the warden, on one occasion if he could speak to her about "a lot of the issues that's

4

been going on." (Doc. 1, p. 9). Bazail-Sawyer told Plaintiff he needed to file a written grievance or speak to his counselor regarding his complaints. *Id.*

*John Baldwin*

Plaintiff also contends that John Baldwin, the Director of IDOC, is purposely taking an excessive amount of time to grant or deny Plaintiff's restoration requests as retaliation for Plaintiff's prior grievances and is not adequately investigating Plaintiff's grievances. (Doc. 1, pp. 6-8). John Baldwin is not named as a defendant in this action.

**Discussion**

As a preliminary matter, the Court notes that the body of the Complaint directs allegations against John Baldwin (IDOC Director) and Ms. Priest (described as a placement officer). These individuals are not identified as defendants in the caption of the case or in Plaintiff's list of defendants. Accordingly, any claims Plaintiff intended to bring against these individuals should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a)' *Myles v. U.S.*, 416 F.3d 551, 551-52 (7th Cir. 2005). If Plaintiff intended to assert a claim against either individual, he must submit an amended complaint in accordance with Federal Rule of Civil Procedure 15 and Local Rule 15.1.

Turning to the substantive allegations in Plaintiff's Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Constitutional claim against Robinson for delaying submission of Plaintiff's good conduct restoration requests.
>
> **Count 2 –** First Amendment retaliation claim against Arban for forcing Plaintiff to

|              |                                                                                                                                                                   |
| ------------ | ----------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|              | sleep on a soiled mattress because of Plaintiff's grievances.                                                                                                     |
| **Count 3 –** | Constitutional claim against Robinson, Wuest, Beebe, Tevernbauhn, and King for dragging Plaintiff into the office to talk about his grievances.                   |
| **Count 4 –** | Fourteenth Amendment access to the courts claim against McIntyre and Wuest for monitoring Plaintiff's attorney-client phone calls.                                |
| **Count 5 –** | Constitutional claim against McIntyre for forcing Plaintiff to sign a good conduct contract before a previous good conduct contract expired.                      |
| **Count 6 -** | Constitutional claim against defendants for mishandling Plaintiff's grievances.                                                                                   |

*Count 1 – Restoration of Good Conduct Credit*

Plaintiff appears to be pursuing two theories of recovery with respect to restoration of his good conduct credit. First, he contends that Robinson is not complying with IDOC policy regarding the timely submission of his restoration requests. But a failure to comply with administrative policies and procedures does not give rise to a constitutional violation *per se*. *See Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004). Second, Plaintiff contends that Robinson's delays are preventing his early release from prison. In essence, Plaintiff is challenging the duration of his sentence. An award of monetary damages in connection with this claim would call into question the validity of Plaintiff's term of confinement. Accordingly, at this point, the claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Pursuant to *Heck*, if the remedy sought under § 1983 would require a finding or judgment that would have the effect of invalidating a conviction or sentence, the plaintiff must first "prove that the conviction was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Thus, Plaintiff may not pursue a claim for money damages unless and until the underlying challenge to his loss of good conduct credit (or the

prison's failure to restore the same) is resolved in state court or in a federal habeas proceeding. For the reasons stated herein, **Count 1** shall be dismissed without prejudice for failure to state a claim and as *Heck*-barred.

*Count 2 – Retaliation Soiled Mattress*

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper"); *see also Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). To state a claim for retaliation, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). In other words, naming the suit or other protected activity and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id*.

Plaintiff alleges that Arban forced him to sleep on a mattress soiled with urine and feces when he was housed at SWIC. According to Plaintiff, this was retaliation for Plaintiff's prior grievances and for his refusal to withdraw certain grievances. These allegations suffice, at this stage, to state a retaliation claim against Arban. Accordingly, **Count 2** shall receive further review.

*Count 3 – Unspecified Constitutional Claim against Counselors*

Plaintiff claims that certain counselors (Robinson, Wuest, Beebe, Tevernbauhn, and King) "drug" him "into the office" for writing grievances. (Doc. 1, p. 7). He also alleges that "staff" black balled him and indicated that his grievances were problematic and would continue

to be denied. (Doc. 1, p. 8). The allegation that certain counselors "drug" Plaintiff into an office to talk about his grievances, standing alone, states no constitutional claim. The allegations directed against "staff" are not connected with any particular defendant and, in any event, are too vague to state a claim under *Iqbal* and *Twombly*. Accordingly, **Count 3** shall be dismissed without prejudice.

*Count 4 – Attorney Phone Calls*

Plaintiff claims that, after he filed a grievance regarding an incident involving McIntyre, McIntyre began monitoring all of his attorney phone calls. McIntyre's supervisor was present and involved in monitoring at least one of Plaintiff's attorney phone calls. The Complaint suggests that the monitoring was not an isolated incident and occurred on more than one occasion.

Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). Without a right of access to the courts, all other rights an inmate may possess are illusory, being "entirely dependent for their existence on the whim or caprice of the prison warden." *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir. 1973)); *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir. 1988). The right to access the courts is violated when a prisoner is deprived of such access and suffers actual injury as a result. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). As with all claims involving the right of access to the courts, a claim of interference with a prisoner's communications with his lawyer cannot proceed absent a showing of hindrance. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010) (evaluating claim involving interference with legal mail). Generally, this requires alleging a connection between the alleged interference and "an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d

664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). In other words, Plaintiff must identify the underlying claim that was lost.

Here, Plaintiff does not identify an underlying claim that was lost. The Complaint does suggest, however, that his attorney communications were being monitored on a regular basis. In *Guajardo Palma,* a case involving written attorney-client correspondence, the Seventh Circuit indicated that a practice of monitoring legal communications may be sufficient to establish a hindrance in an access to the courts claim:

> [P]roof of a *practice* of reading a prisoner's correspondence with his lawyer should ordinarily be sufficient to demonstrate hindrance. The reason is that knowledge, inferred from a policy or practice, by a prisoner's lawyer that prison officials are likely to read his communications with his client (because they refuse to let him be present when they open the lawyer's letter to see whether it contains contraband or other illicit material) will to a high probability reduce the candor of those communications.

*Guajardo-Palma*, 622 F.3d at 805 (internal citations omitted) (emphasis in original). It seems the same reasoning would apply to a policy or practice of monitoring attorney-client communications conducted over the phone. Accordingly, **Count 4** shall receive further review to allow for further development of the record.

*Count 5 – Good Conduct Contract*

Plaintiff contends that McIntyre forced him to sign a new good conduct contract (SWIC's good conduct contract) even though the good conduct contract Plaintiff signed at the transferor prison was still in effect. Although not entirely clear from the Complaint, it is possible that Plaintiff is alleging this conduct violated IDOC policy. As previously explained, failure to follow administrative rules does not, standing alone, state a constitutional claim. *See Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004). The Complaint does not otherwise suggest a basis for

imposing § 1983 liability in connection with requiring Plaintiff to sign the new good conduct contract. Accordingly, **Count 5** shall be dismissed without prejudice for failure to state a claim.

*Count 6 – Mishandling Grievances*

Plaintiff alleges that his grievances have been mishandled and/or are not being taken seriously. Generally, the denial of a grievance—standing alone—is not enough to violate the United States Constitution. *See, e.g., George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). *See also Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017) ("inaction following receipt of a complaint about someone else's conduct is not a source of liability"). *See also Aguilar v. Gaston-Camara,* 2017 WL 2784561, *4 (7th Cir. 2017) (citing *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009) (acknowledging that the Seventh Circuit has "rejected the notion that 'everyone who knows about a prisoner's problems' will incur § 1983 liability.").

In this case, the claims Plaintiff asserts pertaining to the grievance process fall short of stating a constitutional claim. Accordingly, **Count 6** shall be dismissed without prejudice for failure to state a claim.

**Requests for Injunctive Relief**

Plaintiff's Complaint includes requests for injunctive relief directed at SWIC officials. On June 14, 2017, Plaintiff was transferred to Pinckneyville Correctional Center. (Doc. 5). Because Plaintiff is no longer incarcerated at SWIC, and there is no indication that he is likely to be transferred back to SWIC, his requests for injunctive relief shall be dismissed as moot.

*Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (When "a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred."). The dismissal, however, is without prejudice.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is dismissed without prejudice for failure to state a claim and because it is *Heck*-barred. **IT IS FURTHER ORDERED** that **COUNTS 3, 5,** and **6** are **DISMISSED** without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that, in light of Plaintiff's transfer to Pinckneyville Correctional Center, Plaintiff's requests for injunctive relief are **DISMISSED** without prejudice as **MOOT.**

**IT IS FURTHER ORDERED** that **COUNT 2** shall proceed against **ARBAN** and **COUNT 4** shall proceed against **MCINTYRE** and **WUEST.**

**IT IS FURTHER ORDERED** that **BRAZAIL-SAWYER, ROBINSON, BEEBE, KING,** and **TEVERNBAUHN** are **DISMISSED** from the Complaint without prejudice for failure to state a claim. The Clerk of the Court is **DIRECTED** to terminate these individuals as parties in CM/ECF.

**IT IS FURTHER ORDERED** that as to **COUNTS 2** and **4**, the Clerk of Court shall prepare for **WUEST, MCINTYRE,** and **ARBAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that

defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  August 9, 2017**

*Nancy J. Rosenstengel*

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**